Good morning. May it please the court. My name is John Casperson. I am here on behalf of Yakima Company. We are here because our claim against our surety, Lincoln, was cut short before it had bloomed. And our claim really is pretty simple. Yakima entered into a contract with a government entity in Arizona. As part of that requirement, they were supposed to impose a surety bond, and Lincoln agreed to provide that on certain terms. One of those terms included the posting of a letter of credit, which Yakima obtained from their bank. The beneficiary of the letter of credit was Lincoln. The litigation with the county continued. Ultimately, our clients were successful. They prevailed, and an award of attorney's fees was made to Lincoln for their efforts in participating in that litigation. Now, the court, the Arizona court awarded them just a fraction, of course, of what the attorney's fees, Lincoln contends, they incurred. And Lincoln now contends, basically, that so long as they didn't outright steal the money, they could really, they could spend it however they wanted to. Well, basically, this all comes down to interpreting the GIA, right, or the general indemnity agreement, right? Right. That is correct, Your Honor. All right. And if it's ambiguous, then the district court was wrong. That's one way to look at it. I think it's more than just being ambiguous. I think the district court was also wrong about how do you interpret this particular, and what do you mean when you look at these words, and whether or not when you say they get their attorney's fees, whether or not there is implied in that, in this case, that they get their attorney's fees. In that statement, just by saying that, you're really saying that's got to be reasonable. Well, but if you look at it, and if you say that, but if the district court says it's plain from that language, that's essentially what the district court said, because you got knocked out on the 12b-6, right? Correct. So if you can't say from the plain language that it means reasonable as opposed to actual or whatever, then the district court was wrong. That's exactly what we contend. They were wrong. And when you say that What do you think the language means and permits and allows? It allows reasonable attorney's fees. That's a very simple proposition. What about the provision that the certee, the second clause, where the certee may pay any claim or judgment or expense, et cetera, et cetera, if it was made by the certee in the reasonable belief that it was liable for the amount paid? So they get a bill, the certee gets a bill from the lawyers, and maybe they thought it wasn't the most reasonable amount of, you know, they put too much work in the case, but they did a great job. Obviously, in the end, they won. But the money's owed. So regardless of whether you think it's sort of reasonable in the sense of when we think of reasonable in terms of lodestar and results obtained, so long as the certee had a reasonable belief that it was liable for the bill, it couldn't escape the bill unless there was some, you know, double counting or some mathematical error. Doesn't that end the inquiry? It does not, Your Honor, because even that reasonable element of their belief includes an objective and a subjective element. And what you've just described, I believe, is the subjective side of this test. It has to still be objectively reasonable, as anyone would step back and look at this and say, does this make sense in the context of the work that was done? That's what we were attempting to show. That's what we didn't get the opportunity to show the Court below, is that, in fact, nobody ever had a chance to look at that. The only time it was actually reviewed, of course, was in Arizona, which, of course, put the issue front and center for us. You mean the determination that the attorneys used for $70,000? Correct. What are you asking us to do? Set it back for summary judgment? It may be. I don't think it will be summary judgment, because there's going to be an argument about what's reasonable in these circumstances. That's what it will be. And if the Court – I mean, it could be summary judgment if the Court chooses to follow the – treats that as res judicata, if you will, and imposes that on the surety in our case, then it would be a summary judgment. I don't expect that to happen. So you're looking to go past summary judgment into some kind of a trial? Yes, Your Honor. And we'll have – there'll be testimony, I expect, on both sides as to what is a reasonable fee for what the surety's lawyers did in their litigation. Okay, so you represent Yakima, right? Yes. All right. I was kind of surprised when you said that what that means is reasonable, because that's – it seems that you would be arguing what it means are actual. I'm sorry, Your Honor. Well, what your actual attorney's fees are. Well, the actual attorney's fees – the actual attorney's fees that, according to Lincoln, that they incurred in this case were $245,000. So that's what they're saying their actual fees were. We're saying, well, that may be what you spent. We think that's unreasonable. And one of the evidences we have of that here is what the Arizona court found. And they said – But you say that the clause that I read, that there has to be an objective reasonableness test as well as subjective. What is Lincoln supposed to do when they're presented with the $240,000 bill at the end of the case? Or as it goes along? I mean, it's owed, isn't it? Well, anybody – anytime you get a bill for anything, you have an opportunity to review that and decide whether or not you think it's reasonable or not. We think Lincoln had an obligation to Yakima, because after all, it's Yakima's money they're spending, for them to make a review of that and make a determination as to what was reasonably done at the time. Well, but you say that, but where does it say that in the contract? The contract doesn't say any of that. So that's – Well, the one place it does is the place where Judge Chen referred us to, where they have to act with a reasonable belief. I mean, the word reasonable is right there. And part of what we're talking about here is just the whole idea that when you say something in a contract, it's implied, it's understood that it's got to be reasonable.  Otherwise, you get what other courts have called monkey business, where people can just turn their backs, they can do whatever they want, and there's no accountability. Nobody has to answer for this. Nobody has to – nobody has to step forward and say, yeah, either it was or it wasn't. What if the bill was $5 million? So am I right that Lincoln is saying, we get whatever we're billed? That's what they said here, Your Honor. They said our bills were this amount. They gave us a total figure, $240,000, and they said, there you go. Was there any cap anywhere, or is the letter of credit? The letter of credit was for $250,000. Does that function as a – as a – as a – No, it does not. So they could have expended $14 billion in attorney's fees and then exhausted whatever there was against the letter of credit and somehow gotten a judgment against you for the rest? That's correct. That's the position that they've taken. That's the position they've taken. Yes. In light of Lincoln's apparent right to immediately draw on the letter of credit, how can Yakima state a claim for conversion? The money that they took was Yakima's money at the end of the day. It went through the bank. We had to put it – we had to give the bank money so they would in turn give the credit to – the letter to Lincoln. But when did the conversion occur? It occurred when the case was done and they refused to return us the amount of the money that – that – over and above the amount of the reasonable attorney's fees. That's when the conversion occurred. So after they had gotten the bank – So they had a right to access to it immediately. So you're saying the conversion happened once the judgment for $70,000 was ascertained? That's correct. At that point, then, they were holding money that belonged to Yakima and Yakima should have had the right to get that back. And we didn't have an opportunity to present that case. But they had a right to go get it all before that, right? No question. No question. It was part of their security, part of their collateral. They wanted to be comfortable that if they're going to be – because their obligation was a million dollars under this bond. And so they wanted to be comfortable in that respect. So they wanted to make sure we had kind of a kitty here to make sure if Yakima went bankrupt or something, we've at least got a quarter of a million dollars to protect us. I'm not all that comfortable with some of the facts in this case. What effect does the $70,000 judgment have on all of this? That will be a question that the trial court will get to determine. One of the arguments we'll make, of course, is that we've got a race judicata determination by another court who looked at the question of reasonableness, and that should be followed and applied in this case. Except it doesn't say reasonable attorney's fees anywhere. That's correct. Because that is implied, Your Honor, in the contract – in every contract. It's got to be reasonable. How does the covenant of good faith and fair dealing get into this? That's really a way – if you don't agree with the idea that the attorney's fees have to be reasonable, well, then okay. If you don't like that, what we do know for sure is that every contract, there's an implied covenant of good faith and fair dealing. And that takes us right back into the same analysis where if you don't find it in the plain language of the contract, we're going to still say every contract has to be measured against that standard. Does the determination of $70,000 somehow bind the attorneys with respect to Lincoln to only take $70,000? That will be a decision that the trial court will have to make when they receive – and what's not presented, the record's not developed on exactly what it is the Arizona court looked at, what they considered, and the standard they used to determine what it ought to be. I want to explore with you again this language that I quoted at the very outset. You say, well, there's a good faith requirement – a reasonableness requirement, objective reasonableness. But some courts use the notion that – or cite language that says that it's mainly to safeguard against fraud or collusion or bad faith on the part of the certee. And that it's not just a general reasonableness, objective reasonableness standard, but you've got to find sort of bad faith or fraud in paying the bills of the attorney. That's a pretty high standard if that's the case. Do you take issue that that's not the standard? Do you take issue with that proposition? We do, Your Honor. We do not think that's the correct standard. We think that they all need to be reasonable, and as I said before, a reasonable element is going to include both an objective and a subjective test. Is there a case that interprets a similar language about the certee reasonably believing the money is owed and paying it is subject to a reasonableness, objective reasonableness standard, as opposed to a fraud or collusion standard? Yes, Your Honor. The Gulf Insurance v. AMSCO case that we cited out of New Hampshire is one case. And what the other judge in the Southern District did recently in the Highland case also supports that. It's the very same proposition. The Traveler's Highland case? Highland. Yes, that's it. Thank you. I would like to reserve the balance of my time for rebuttal. Thank you. Good morning. May it please the Court. This is Raul Martinez for Lincoln General. Good morning. Good morning. Let me ---- I just don't see how looking at this contract I can give that it sounds like you're both making a reasonable argument. And so where in the plain language does it tell me what to do? Well, the plain language tells you that Lincoln General is entitled to be reimbursed for expenditures that it felt necessary or expedient to make or felt it was reasonably liable for. So it's a concept of reasonable belief. Now, they haven't claimed ---- that's a different concept than reasonableness of attorney's fees. Judge Chin pointed out to the language that talks about expediency and the reasonable belief that it is liable. Well, I can see how you could win at a trial or maybe even at a summary judgment, but I'm having a hard time seeing how on the length how you can win at the 12B6 stage. Well, you have to go back to the rules of contract interpretation under California law. Well, I know how to do that. But it just seems like you're both making interpretations of the contract that I could see. They may not both be right, but I can't say by the plain language that either are ---- they don't just jump out at me. I think any other interpretation would render some of the terms surplusage or redundant, because you have this very specific language here on the reasonable belief and the expediency requirement. If you read into it as they want you, an implied term of reasonableness, you're writing out portions of the agreement. The first rule is you look at the contract itself, you interpret it in the plain language, and you don't go to extrinsic evidence unless there's an issue there. Are we looking at the part of the GIA that's number one, indemnity? Yes. And the language that says including attorney's fees? Is that what you're relying on? So we get our attorney's fees, whether they're reasonable or not? That paragraph and perhaps more importantly the next paragraph that says the surety may pay or compromise any claim? Any claim, demand, suit, judgment or expense. So the first paragraph is read to mean reasonable attorney's fees. I know you don't like that, but let's assume that it does, that the identification extends to reasonable attorney's fees as part of costs. You're saying notwithstanding that, so long as a surety had a reasonable belief that it was liable, even for an unreasonable amount, the second paragraph kicks in and overrides the first? Well, it's a matter of contract interpretation. A more specific provision overrides the general provision. So as a general concept, you can say that the principle shall indemnify the surety against any and all liability. That's a rule of construction, and that's what you get on the merits of when we're to evaluate this in the first instance. The question here is whether there's a plausible interpretation, enough ambiguity such that you've got to get past 12b-6. I mean, I understand your arguments on the merits, but you have to make an argument and convince us that this is so plain and so clear that there's no other reasonable construction of this, of these two paragraphs that would permit the construction of the merits. Yes, and so plain and so clear because if you interpret it the way they want to interpret, you render that second paragraph that talks about expediency surplusage. And if I can explain why you have this type of provision in this type of contract, and you have to understand the surety relationship. Surety is not an insurance policy. What happens is the surety jumps in to take over the obligations of the contract on a performance bond in this case. So basically the agreement between the parties is that you go and take over the contract, and after you pay all this money and you build the project, the principle can't go back against the surety and second guess some of the decisions that were made. So that's where the expediency concept comes in. The practical implication is that you could run up attorney's fees, some astronomical amount. You could exhaust the letter of credit for $250,000 and then somehow get a judgment for the remainder. And it could be who knows. Well, the mitigation against that is the reasonable. What is the mitigation against that? The reasonable belief language. So the surety has to have a reasonable belief that it's obligated to pay those attorney's fees. That's critical because if it has problems with the fees of a law firm, they can challenge it. But that is not their theory in this case. But if the work was actually done by the law firm, it's not much it can do with the law firm. What if it was just totally lax and allowed the law firm to continue to generate and churn papers, run up a bill of a million dollars on a $10,000 case. Work was done. It's owed. Reasonable belief. If that gets sued by the firm. I agree with you. The surety would not have a reasonable belief that that amount is owed. They could seek State bar arbitration, resolve the dispute that way, and not pay it. But that's not what they're claiming. They're not claiming that we didn't have a reasonable belief. They're claiming that the interpretation of this agreement requires a reasonableness to be implied into the ---- between reasonable belief and reasonable attorney's fees. It's a very huge difference. Because reasonable attorney's fees is a concept that turns on what the law firm did, what the tasks for the law firm were. When you get to the reasonable belief of the client, it's a different mentality. You look at it differently. Clients don't see attorney's fees the way lawyers and judges do. So that's where the lodestar concern comes in. So that whole line of authority about reasonableness doesn't fit at all into this agreement. But it just seems ---- it seems hard to make that determination at 12b-6. You know, counsel is saying it would have to be a trial. I could see a summary judgment situation where, after it all came out, that someone where ---- that there weren't any material disputes in the facts that your interpretation that you could win at summary judgment. Let me ask you about the conversion. And I asked ---- I said, you had an absolute right to go draw on that $250,000. So ---- but he's saying the conversion happened when the State court said $70,000 was reasonable attorney's fees. What's your answer to that? That money was no longer their money. Once you transfer a letter of credit, it's the bank's money. So there's no ---- there can't be legally any conversion, just as a matter of law. I freely admit I don't understand how Arizona gets into this and how the $70,000 determination works. You know, I think what they did is they seized on the fact that some judge had determined that the reasonable amount was X. And now they're going after that as saying that's all we can recover is what another judge determined was reasonable. How did it get before that other judge? On a statutory provision under Arizona law that allows recovery of attorney's fees in certain cases. That was in the underlying case. In the underlying case, yes. Right. And so the statute is much narrower in terms of what attorney's fees can be recovered as opposed to the attorney's fees recoverable under the indemnity agreement. But it was a determination of reasonable attorney's fees within the meaning of the Arizona fee shifting statute. Right. With limitations, limitations on what can be recovered, et cetera. What the statute says is that the determination, what's reasonable, does not govern what contract obligations dictate should be paid as attorney's fees. So you would argue, of course, that's not binding. I mean, it's kind of curious to me that we've got a judge that seems to have looked at this, but we're not clear what the judge looked at. It said $70,000. But you say, nevertheless, it's $240,000. Because our indemnity provision requires indemnification for anything arising out of the bond. It's a much broader concept than prevailing party attorney's fees under the Arizona statute. And again, we get back to the difference between 12 v. 6 in either the trial or summary judgment. You know, you have to also stand in the shoes of Judge Huff and what she had before her in this case. And their theory was that we're automatically bound by this reasonable attorney's fees determination in Arizona, and you read into the agreement this concept of reasonableness. That's what she had before her. Now, yes, you can invent possible other theories that might come up on a summary judgment motion. But as this judge, the district court, looked at it, this was a correct decision. So how much money is on the table in terms of this dispute, the difference between $70,000 and $240,000? Yes, I believe that's correct. You know, that's a lot of money for me and my kids. But is that subject to a mediation? I mean, it seems to me that you're going to spend more money with an attorney's fees if this goes back to summary judgment than the trial that is on the table. You know, I can't speak to settlement discussions. Has there been any? There have been some discussions. We had the pre-mediation conference. But there was no agreement. Let me explore, again, the clause that you rely on, the second paragraph. The Travelers v. Highland Partners case seems to have viewed it the same way you did with respect to the normal kind of expenses that are incurred. But when it came to attorney's fees, they said, well, wait a minute, that's a little different. We are going to impose a kind of a reasonableness standard. And the danger is this whole carte blanche, blank check notion that, well, it's not my money. I mean, it's your money, not my money. I'll spend it now, and I'm going to get it back from you. What incentive does the sorority have to keep a lid on things or to be reasonable? And so there is a possible construction of this second paragraph that makes it consistent with the first paragraph. The first paragraph is read to include reasonable attorney's fees. It still has an operative effect. It may apply to all other kinds of expenses and settlement of the case, et cetera, et cetera. But it may not have the same force with respect to recoupment of fees expended. Can I respond in two ways to that? Yeah. First, paragraph 21 of the agreement allows prevailing party attorney's fees and expressly uses the word reasonable attorney's fees. That's a powerful construction tool. Okay. And, you know, if you can resolve it as a matter of law and interpretation of a contract is a question of law for this Court, unless there's some extrinsic evidence, it's going to change that. So you can have some abstract ambiguity, but that doesn't get you anywhere. And that's what they're pointing to, some theoretical ambiguity without construing the document as a whole. You have to construe every provision and harmonize it. If you do that, they lose, even on a district court 126 motion. Let me ask you about the conversion again. What if for the purposes, just hypothetically, that Lincoln drew up the entire $250,000 for attorney's fees, but had only incurred $50,000 in attorney's fees? Could that constitute a breach of implied covenant of good faith and fair judgment? I think I agree with the cases Judge Chen cited that bad faith, collusion or fraud are defenses. That's a legitimate argument. That's not what they pleaded. Could there ever be a conversion charge here? I don't think so. There could be a conversion charge dressed as something else. Conversion technically requires that the plaintiff owned the property in question have some ownership control possession. And this is not in their control possession. That's the reason that it's built this way. So you're saying because it was a bank line of credit that it could never – there could be a dispute over, as I said, the implied covenant and fair dealing. You're not – I'm not saying those are the facts here. But that could possibly survive. But you're saying there could never be a conversion with this particular way it's set up and the mechanism? Correct. Okay. Can I respond to the Traveler v. Highland case? First of all, it's unpublished. So there may be a reason why the district judge decided not to publish it. Secondly, it did not analyze the key language that we're focusing on. And it did not discuss the cases that we cite in our – in our appellee's brief on pages 14 to 17. I think Judge Chen alluded to some of those. But it doesn't simply suggest that there is a plausible counterconstruction. That's all I'm – I'm not saying it's right. Yeah. I'm not sure – I'm not sure you can say that, because if you look at the authority it cited, it cited Amjur II. And then it footnoted the cases that Amjur II cites. So I think if you start peeling away the layers on the onion, you'll see that this unpublished Traveler's decision really should not be given any weight. Let me ask you. Are you aware of any cases in which a court has either ordered the award of attorney's fees or sanctioned the recovery of attorney's fees, which it found to be unreasonable? I know you say it's not required here, but I'm just curious. Has that ever happened? I know that there are cases that talk about awarding actual attorney's fees, which obviates the discussion of reasonableness implicitly. But I don't know of any court that has actually said, we think the fees are unreasonable, but we're going to award them anyway. I concede that. Well, and is it naturally in almost every other context the Court implies, whether it's a statute or a fees-stripping statute or contractual provision, they almost always imply reasonableness, even though it's not necessarily scripted, explicit in the statute. I don't think that's necessarily true of the cases we cited. They're saying we're not going to get into reasonableness. We're going to look to see if there was bad faith, collusion or fraud on the part of the surety, because that's the contractual agreement. And that's the First Circuit, Second Circuit. That's what the Court should focus on. Those are the cases we cited on page 4. Bristol-Steele. Bristol-Steele. That's the key case. So if the district judge can't rely on that as precedent, then where are we? I mean, if you can't take this agreement and you have to see the whole idea of this agreement is to avoid litigation with the principal, because you've already fronted a lot of money to defend the litigation and you've got a letter of credit to back it up, and now you wind up getting into more litigation with a principal, which has the result of raising premiums. So if you look at the big picture, the whole idea of Bristol-Steele is, well, let's make it easy for the surety to win these cases against the principal. The principal went into it with his eyes open. Yakima went in knowing exactly what this contract provided, and now they're complaining about the consequences of plain language. Alitoson Well, that begs the question a little bit. Maybe they went into it thinking there was going to be some good faith on the other side and some policing of the attorney's fee that it might be liable for in the final analysis. Bristol-Steele Reasonable belief. I mean, if they have a challenge to that issue, if they believe that Lincoln General really didn't have a good faith belief that those attorney's fees should be paid, then they could have alleged that, but they didn't. They didn't raise that as a theory at all. And they still insist that their big claim here is that reasonableness has to be implied into the agreement. All right. Thank you for your argument. Your time has expired. It's interesting to listen to the discussion in the abstract. One thing we can't lose sight of here is that we've never seen the bill. We have never seen the bill. That's set forth plainly in our complaint. They have never let us look at that. We don't know if they're in good faith, bad faith, or something else. Correct, Your Honor. There's an exhibit to our complaint that we filed at the district court with the correspondents. They gave us a summary. Here's the total. Have a nice day. That was the end of the conversation. They wouldn't even give us our $10,000 back. I don't even know what happened to that. But it's just, I mean, it was just like, it's just shocking, really, the way that this was handed. You were asking for $10,000. Yes, Your Honor. And we're told. Nothing. Actually, we wouldn't say we're told. No, we just weren't told anything. So we filed the lawsuit to get someone's attention is what it boiled down to. Now, there were two attorney's fees petitions filed in Arizona. Yakima had one, too, because they carried the water over there. Most of theirs was granted. Lincoln's got a fraction of that. There's some questions here. We need to get some answers. The Court didn't give us the opportunity to explore this, to develop it, and figure out what kind of a case we've got here. Now, we're not alleging they're guilty of bad faith. We don't know that. But all of those things that you say sort of make me think it's not necessarily race judicata, because what they were entitled to as a part of defending the lawsuit is different than what they thought they had to reasonably do in order to prevent harm. You could be right, Your Honor. And when the records develop, the trial court will decide whether or not race judicata should apply in these facts. We just don't know that at this point. What do you do with the Fourth Circuit and the First Circuit cases sided by the other side, the Bristol-Steele and the constructural Andrade Gutierrez case that says, in this kind of situation, the test is bad faith, collusion, not just objective reasonableness, as you advocate? I think they're wrong, Your Honor. We contend that any time you're talking about acting in good faith, you have to be acting reasonably. I just think those terms go together, and I think the courts that read it that way are the courts that set the better precedent. And the reasonableness is part of that is policing the incurrence, the accrual of fees, not just paying it when it's owed? Of course. Of course. They need to treat the money as if it was Yakima's money, and they need to be just as diligent on that as they would for their own. And so it's just they need, they have an obligation here to just not let them run wild. And I'm not saying they did. So you're trying to recover what? We're trying to recover, well. How much money? If we're lucky, we'll get the difference between the $250,000 and the $70,000 award that was made in the Arizona court, because we got that money. If you're lucky, you'll get that after a trial? Yes. Or we'll get it on summary judgment if we're convinced the trial judge that race judicata should apply. And the attorney's fees will eat that up in the process? Hopefully not, Your Honor. We haven't spent very many yet. I thank the court for its attention. All right. Thank you both for your argument. This matter will stand submitted. Before this court recesses, I do have a question. I don't have a third page on my calendar, and there was originally a case that was submitted on the briefs. The Rancho Mountain Properties v. Ray Gray and Linda Gray, 12-56362. Right. Okay. All right. That was submitted on the briefs, so it will be submitted as of this date. I just wanted to make sure to cover it on the record. Okay. Thank you. This court will now stand in recess for the week. Thank you.
judges: Chen, TROTT, CALLAHAN